al. Good morning, Your Honors, and may it please the Court, my name is Joseph Briggett, and this is a commercial case regarding farm credit, and my clients are two of the individual farmer defendants, and this case concerns issues of civil procedure, and specifically the default judgment procedure. And despite my clients having filed a timely answer in this case, the Court entered a default judgment against the defunct partnership entity, which- And this was just a regular general partnership, wasn't it? We don't even need the name general. I keep seeing these people referred to as general partners, but this was a simple partnership, wasn't it? That's correct, Your Honor. The four people, the Grabanskis, however that's pronounced, Grabanski and the Keelys. Correct. Husband and wife, husband and wife. And they formed a partnership called G & K Partnership. That's correct. G & K. But G & K has no standing by itself, unless there's some aspect of Texas law that changes that. You look to the four partners. That's correct, but I would disagree, Your Honor, in that G & K farms would have standing. Well, that's what I want to know under the Texas partnership law. It varies. So why is G & K a standalone legal entity as opposed to the four partners? Your Honor, the Texas courts, and specifically in American Starr v. Stowers, have accepted the entity theory of partnership as opposed to the aggregate theory, and this court has also reviewed that in the Evanston case, and as a result of that and specifically the provisions in the Texas Business Organization Code 152.306, the creditor may pursue its claim against both the partnership and the individual partners, and both have standing to challenge the judgment. Fine. I just wanted that confirmed. Now, when the answers were filed by the individual partners, as I understand it, and that's one of your bases for challenging the default, did G & K file an answer? No, Your Honor. G & K did not file a formal answer. The response that was filed in the court was by the trustee. Okay. Because the Grabanskis, who are— What did G & K file by the trustee? What was it termed? CPS had filed a proof of claim. No, sir. To the action in district court, when it was removed and the complaint was amended, as I understand it, Mr. and Mrs. Keeley filed an answer. That's correct, Your Honor. And Mr. Grabanski filed an answer. Mr. Grabanski filed a motion to dismiss. Okay. He was the motion to dismiss. All right. What did Mrs. Grabanski file? Mrs. Grabanski did not file a response of pleading. All right. And what did G & K file? G & K itself did not file a pleading. However, G & K Farms, because it was a partnership in bankruptcy, the standing was exercised by the trustee in the Chapter 7 bankruptcy case. And they did file an objection to the proof of claim of CPS. And when the reference was withdrawn up to the district court, that objection was filed into the record. And in that objection, the statute of limitations defense was asserted. But there was no formal answer filed by G & K Farms. Because that was an objection to a proof of claim, which was filed in the bankruptcy court. That's correct, Your Honor. But the issues in this case that I want to focus your honors on today are, first, that the district court should not have entered default judgment in the first place. Against G & K. Correct, Your Honor. Because it wrongly applied the Supreme Court's decision in Frow v. De La Vega when it granted the default judgment. And, second, there's also a retrospective aspect to Frow v. De La Vega that has been adopted by the circuit courts, which is, after this case went to trial and my client, John Keeley, in his personal capacity, proved his statute of limitations defense, the court should have made its ultimate determination on the merits, consistent by vacating the default judgment and making those findings consistent. And Mr. Keeley's statute of limitations defenses were against his personal liability as a guarantor, correct? That's correct, Your Honor. So he had potential liability both as a partner, under general partnership law, unless there's something different in Texas, and he also had potential liability as a guarantor. That's correct, Your Honor. And that trial concerned his liability as a guarantor. Right. But the analysis would be the same. And so those judgments should have been made consistent. But the trial as a guarantor followed the default judgment against G & K. That's correct, Your Honor. And the third issue, setting aside FRAO, Your Honors, is that under the good cause standard for determining good cause to vacate the default judgment, the court below should have vacated the default judgment. And as the standard of review, our position is that the first two issues concerning FRAO v. De La Vega are reviewed de novo, and the third issue concerning the good cause to vacate the judgment is reviewed for abuse of discretion. However, under this Court's precedent, because it is a default judgment, this Court has held in multiple decisions, including the Chinese drywall case, that only a slight abuse of discretion is required to reverse the default judgment. Before you get into your argument, one more procedural point that I would like for you to explain. Mr. Grabansky filed for bankruptcy. What type? Personal, Chapter 11, what? He filed a personal Chapter 7 bankruptcy. Chapter 7. And G & K Farms was listed as an asset of the estate. That's correct, Your Honor. Tell me how Mr. Grabansky, who's in bankruptcy, and G & K Farms, an asset of the estate, how they moved over to, with this transfer out of bankruptcy into district court, how were they moved over there in light of the usual stay when you're in bankruptcy, that sort of stuff. Just tell me how they got there. Tell me how they got from bankruptcy to the district court proceeding, because you don't object to that. I didn't see any objection about any of that in your brief, so I assume it was okay. I can do that, Your Honor. This was a removed case. Right. Based upon Section 1452, and based on the reference under the local rules was initially referred to the bankruptcy court, and approximately one year after the case was filed, my clients moved to withdraw the reference to the district court, which was not objected to, and the case was withdrawn. To withdraw the reference to the bankruptcy court. That's correct, Your Honor. And it was transferred back to the district court. That's correct. How did Mr. Grabansky and G & K get over in district court since they were in bankruptcy? As a result of the order of the district court, when it withdrew the reference, it withdrew the whole case to the bankruptcy court, or excuse me, to the district court, Your Honor. Does that answer your question? Yes, sir. One other question before you get to your, I know you want to get to your merits, the three points, but then this may just be my ignorance about Texas partnership law, but how is it that if your clients assigned their interest in 2009, they are liable at all for the debts of this partnership? Your Honor, that goes back to the statute in its Texas Business Organization Code, a combination of 152.304, 305, and 306, that prospectively for liabilities that are incurred after the partner is associated, the partner continues to be liable. So that's not disputed by you? That is not disputed on this appeal, Your Honor. And the first issue, the principal issue, Your Honors, is that entry of default judgment should never have been entered in the first place under the Supreme Court's decision in Frow v. De La Vega, and that is a very important case to this appeal. And in that case, the Supreme Court held it was a case in 1872 in which there was a joint fraud charge against eight defendants. It was a Texas land case. And a default judgment, or it was a decree pro confesso at the time, was obtained against one of the defendants, and it was made then a final decree akin to a final judgment in our current civil procedure. Then the case went to trial against the other seven defendants who prevailed on their defense, and it was determined that the joint fraud charge was dismissed. When the case went up to the Supreme Court, the Supreme Court said we can't have these inconsistent judgments, and the district court has to make them consistent. It has to make them congruent. It would lead to absurd results. Well, but didn't it kind of make sense? Weren't we talking about a tract of land in Frow? That's correct, Your Honor. Where the plaintiff claimed that he had been defrauded by these defendants into executing some conveyances that gave them title to the property. That's exactly correct, Your Honor. And so then it would be inconsistent if the determination was that the property is going to belong to the person who claims to have had it before he was defrauded out of it, and then there's a determination that there was no fraud, and yet as to one of the defendants, there's a determination that there was fraud. So now we've got maybe two people who would have title to this tract. That's correct, Your Honor. That would be incongruous. That would certainly be incongruous, and we do not contend that this is a joint liability case. It is a joint and several liability case, which is distinguishable on those grounds. However, the circuit courts, since the Supreme Court's holding in Frow, have extended that logic to joint and several liability, and a majority of the circuit courts have extended that reasoning to joint and several liability. And, in fact, this court, although it did not mention Frow in Lewis v. Lynn, incorporated that reasoning and cited cases that those cases themselves cited Frow for the proposition that the judgments must be made consistent. And the lower courts in this circuit have consistently, and we cited a number of these cases, the lower courts, when faced with a default judgment in a case with multiple defendants, have looked hard at the motion for default judgment, looked at the risk for inconsistency. Isn't there an argument? They say interpret Frow narrowly, and the district court did. In other words, is it inconsistent within one judgment as distinct from trying to harmonize two separate liabilities, partnership liability, the personal note liability? Isn't that what they're arguing, that Frow doesn't extend to that broader effort to harmonize things that are dissimilar? That's what they're arguing. I believe that they're arguing that it does not apply to joint and several liability because the level of harmony, as you put it, is not as compelling.  Well, but coming back at it, as Judge Higginson's pointing out, here we have their liability as a partner, and you've said they can be held in even though they gave up their partnership rights, and liability as a guarantor. I mean, CPS obviously wanted to tie up all its options, so not only did the partnership enter into the contract making them liable as partners, but they got these personal guarantees from the Keelys and the other two Grabanskis. So I don't want to make this sound pejorative, but it seems like apples and oranges. It's not apples and oranges, Your Honor, and I want to explain why, because you're correct. There's the guarantee claim, which we prevailed upon below, and that claim was dismissed. And there's the derivative liability as a partner, which under the Texas Business Organizations Code my clients should have had standing and been given the opportunity to contest that, and they weren't. They were not given that opportunity. That's a very important part about Texas law because there's, in other states, some other states, if you're a partner, you're absolutely liable. You are the legal entity that's to be sued, and you're calling it derivative liability. Yes, Your Honor. Cite us the Texas statute that makes it derivative liability. That statute, Your Honor, is Texas Business Organization Code section 152.306, subsection B. And the important part of that statute and the way it's been interpreted by both this court and the Texas Supreme Court is that that statute says, based upon the same claim. And it acknowledges that the claim against the partnership entity and the claim against the partners are the same claim. That's the important language. And the partners, being that they're accused of liability on the same claim, must have standing to challenge that liability, and that's what my clients were denied in this case. Your error isn't really inapplicability of frow. Your error is that they were denied the opportunity in the partnership matter. Is that the reversible error? It isn't that they were misapplied necessarily frow. It is a frow issue as we see it, Your Honor, because the way that they were denied that opportunity was by the default judgment against E&K Farms, which the district court held precluded them from asserting their defenses as partners, although they had in a timely answer asserted them. It used that default judgment against them in a way that frow prohibits. And the most important thing in this record, Your Honors, are that the Keeleys had filed an answer at 944, in the record at 944, that asserted their statute of limitations defense. And in the default judgment, the court did not, as the other cases that we've cited, considered the risk of inconsistent judgments. The court did not consider the . . . That's the statute of limitations defense to the guarantee claim. I'm sorry, Your Honor. That statute of limitations defense raised as to the guarantee claim. As to both the guarantee claim and to the partnership claim, Your Honor. That's what they said? It did not specify, Your Honor, and I see that my time is up, but I'd like to briefly . . . You may. The answer that was filed was filed by both John Keeley and Don Keeley. John Keeley, who was a guarantor, and Don Keeley, who only sought or alleged to be liable as a general partner, and they both jointly filed an answer in which they contested the claim based upon a statute of limitations defense. What claim? The claim of CPS against G&K Farms and the partners. And Don Keeley, because she had no guarantee liability, would have no reason to assert and I acknowledge that it did not specify which claim, but she would have no reason to contest the claim on any other basis than her derivative liability as a partner. Thank you. Good morning, and may it please the Court. My name is Clayton Bailey, and together with Abel Liao, we represent the Appley Crop Production Services, Inc., or CPS. I'd like to begin with a couple of clarifications. The Keeleys were never denied an opportunity to object. They could have said something to the trial court before the default judgment was entered. In fact, it was determined, and the Keeleys have admitted in this case that they had standing to say something. What's the document at 944 that they say? What's the document he referred to as an answer in the partnership case? Well, that's the thing. There's never been an answer on behalf of G&K. And I want to make that. There was another thing I wanted to clarify. There was an objection raised by the Grabansky's attorney as it relates to the Grabansky's. There was nothing filed on behalf of G&K Farms. I think that's very important to note, and the Court can find that by we — the parties got together and put together some — there was a joint appendix of documents from the bankruptcy court and filed it in the district court. What's he referring to at 944? Do you know? I have no idea of any type of answer on behalf of G&K. There's nothing — I think the argument was is they relied on this old Corsicana case from Texas that deals with the old statute, which deals with — that's not even instructive anymore because it deals with the aggregate theory of partnership law. Texas has adopted this new statute, which is the entity theory. And the Supreme Court, Amstar, says all that old case law is no good. But their argument is, is under this old case law that because all of the partners filed an answer, that was good enough for G&K. And that's not the law. There's no case law for that position at all. The other thing I wanted to clarify for the Court is the reason that we were allowed to proceed in the district court against G&K is because the trustee allowed us to do so. And there was an agreement on that, and that is filed in the Court's record. So who should have answered for the partnership? For G&K, G&K should have gotten a — The individuals that are being held liable, the Keeleys. The Keeleys should have popped up and said — they should have filed something and said, out of an abundance of caution, because, you know, it's our money at stake. It's our personal money at stake. We object, and here's the reason why. Or they, if they felt like they didn't have standing, and they did, and the Court found they had standing, is they could have went to the trustee like we did and said something to the trustee and got some type of agreement to file something on behalf of G&K. But let's step back and look at what happened in this case. There was a finding of a willful default, and there was a reason why the Court found that. The Keeleys sat for months on their hands and did nothing because they thought they had this defense. This defense was a statute of limitations on their own behalf, and it was an unreasonable belief that they had this defense. And what happened is, is we sought the default. The clerk entered the default. We filed our motion for a default judgment. Two months later, the Court grants the default. Is that compelling factually or legally, though? I mean, when we emphasize they sat for their hands, you aren't disputing that your client waited too long on the personal guarantee. Well, yeah. In terms of waiting. But legally, if they didn't feel they'd surrendered their interest as being partners in 2009, it wouldn't occur to them that they would then have to enter in and respond. Oh, I disagree. No, I'm just asking you. Yeah, I disagree with that because, as they admit, and they're exactly right, they may have entered into this assignment deal down the road and tried to backdate it. But the fact of the matter is, is when G and K incurred this debt, they were partners, and they were on the hook. No matter what they did down the road, it doesn't make a difference. And I think they concede that. When did Texas adopt this new entity partnership theory as opposed to aggregate? It's interesting. We've had three different statutes. Up until 1999, there was something called the Texas Uniform Partnership Act, and that was the old aggregate theory. And then what happened is, I want to say, after that we had the Texas Revised Partnership Act, which adopted the entity theory. And then in 2010, we now have this Texas Business Organizations Act, which applies to any partnership at any time. But that basically codifies the old Texas Revised Partnership Act. So really, since 1999 forward, we're under this new entity theory. This general partnership, I believe, was created in 2008. But even if it had been created beforehand, the Texas Business Organization Code applies to any and all partnerships. So if I can move on to this, and I've handed the court. If there is any, I doubt there's anything in the statute. Is there any authoritative text as to why Texas went from the aggregate to the entity? I know this was sort of going across the country at the time, and all these LLCs were starting, et cetera, where you have a general partner and you've got a limited partner. I mean, much more emphasis on that. Will we find anything in Texas law about why it went from the aggregate to the entity theory? I don't know, and I would be guessing. I will say that the Supreme Court's case in Amstar talks about that in some detail. I don't know if it was because, Your Honor, we were under one uniform act, and maybe that uniformity amongst the states has changed. But it's very clear that in 1999, that's where the change occurs, in Texas at least. And I don't know about other states. At the end of the day. And again. Oh, no, no, that's fine. Again, under the entity theory, both the partnership, qua partnership, the name, whatever it is, and the individual partners are all collectively liable. Okay. Potentially liable. Let's talk about that, and this is where, I don't know if you all have this in front of you, as a democrative. If you look above the dark horizontal line, what we have here is CPS's case against G&K Farms. Okay. Under Texas statutory law with regard to partnerships, G&K Farms is a separate distinct entity from the partners. The liability, for example, on the account claim was G&K Farms. The partners didn't do anything wrong. It was on G&K. And what happened is, is under the law, we had to proceed against them. Once we obtained a judgment against them, we had to go out and try to execute on G&K Farms, and I think we have 90 days, and if we can't collect during that period of time, the statutory law says the second step is to then go against the partners. It's derivative liability is what that is. It's not joint and several liability. It's not joint liability like what we've talked about, frow and the division between the courts, but it's derivative liability, and that's the key. So what you have is, is when we first got the default judgment, liability became fixed and damages were fixed too because they were liquidated damages. So there was never any way possible that there was going to be any sort of inconsistency in the judgment as it relates to the Keeleys and their partnership capacity and G&K Farms. It was all set and ready to go, and if the entity could not pay the debt, then they were on the hook. That's just the way the law works. And thus, that is completely distinct from CPS going against Mr. Keeley individually on the guarantee. That's a whole other enchilada. That's a separate agreement he had. Okay, but let's just assume. What's the mischief if frow is interpreted expansively and the district court described it? I'm so glad you asked that question, and the reason of it is this. We don't care how you construe it, honestly. Okay? You can apply Linn. You can apply frow, broad or narrow. It doesn't make a difference because the reason of it is there is no incongruous result here, none. Now, I'm a firm believer that you apply a court case from what it says, and frow dealt with joint liability, and you have what's called this narrow point of view at the courts. They say it only applies in joint liability cases, and I believe the theory that they have is correct because in joint and separate liability, that's a whole different thing. You can have multiple defendants. Some people get off the hook, but, you know, you can go after one defendant and collect against that one defendant. I think the narrow view is the correct view, but here's the important thing. That's why you have on this chart the dash in joint or joint and separate liability, none. That's, well, yeah, we've got that there. At the time we sued J&K Farms, there were no other defendants out there that would have been joint or joint and separate liability liable. The party that owed the debt was just J&K, and that's the reason you proceed against them first. The reason that frow doesn't apply, no matter how you cut it, or the Linn case from the Fifth Circuit, it doesn't apply here is when Mr. Keeley prevailed, he prevailed on a limitations defense that applied to the guarantee, and I apologize to the Court. We misspelled that. Now, when you filed your action in state court against Grobanski and Mr. Keeley. Yes, sir. So it was only against Grobanski and Keeley. You removed to, then you removed, they removed it to bankruptcy court. You filed an amended complaint adding Mrs. Keeley and J&K. That's right. Now, why did you do that? Well, because it. Why did you only sue Grobanski and Keeley in the first place and then add Mrs. Keeley and J&K? Because we initially proceeded on the guarantee, and then we looked at the law, and we determined that. Wait, so the guarantee was all you proceeded on when you filed in state court? Initially. All right. And then we amended. We brought in J&K, and we brought in Mrs. Keeley at that period of time, and that's when we went forward as the Texas Business Organization Act requires. And why weren't you seeking derivative liability against Mr. and Mrs. Grobanski as you were against Mr. and Mrs. Keeley? Well, Mr. Grobanski was in originally, and the court, the trustee said you can't proceed against the Grobanskis, and that's the reason why we got to where we are now where we're seeking against Keeley's, which is appropriate because there's joint and several liabilities. So we can just go after the Keeleys, but we can't go after just one Keeley under the law. So that's the reason why we did what we did. But going back when Mr. Keeley prevailed on his limitations defense, it's very important to note that you just can't take that finding and apply it over here to the guarantee claim. And the reason of it is we're dealing with different sections of the Texas Civil Practice and Remedies Code. Wait. You said you can't take the finding that the statute of limitations applies, and you can't take it over and apply it to the guarantee or to the action against the CJA? Excuse me, to the account claim, to the account claim. I apologize if I misspoke. We're talking about two different sections of the Texas Civil Practice and Remedies Code, and it's really dealing with the accrual of the limitations period for both claims. In this case, as it relates to the account claim, the four years begins from the cessation of the relationship, and there's evidence in the record, and I'll be more than willing to give you the cite if you'd like it, that our relationship, CPS's relationship with G&K, was still going on in the summer of 2010. We filed the amended lawsuit in April of 2010. So we were within the four-year time frame. That's the reason why the district court looked at everything and said, look, there's not a situation here where you get a logical result. So I guess to go back to one last thing is if you step back from all of this and you look at it, the trial court got it right. It tried to synthesize the law. It's got a very thorough analysis here, and it came to the right conclusion. What we have is a situation where CPS gave very valuable goods and services to the partnership. It consumed it. The Keeleys benefited from it. The court applied Texas statutory law and held them derivatively liable, and that's fair because they're the ones who selected the form to go under as a partnership, and they put their personal assets on the line. They have a remedy. If they don't like what's going on here, they can file a proof of claim, like they have, by the way, in the Grabansky bankruptcy, and maybe they'll get some money there under indemnity or whatever else, but they're kind of in the same position we are. We may be hitting a dry hole with G&K Farms. It just is what it is. The court followed the law, and we have a just result here. So with all of that, I would just ask the court to affirm. We appreciate your time. Thank you, counsel. Yes, Your Honor. I want to address the question that the panel asked regarding the why CPS brought this claim against Mrs. and to address their position that it was only brought against John Keeley as a guarantor. In fact, the action was brought against G&K Farms when it was amended, and they sued Don Keeley and John Keeley both in their capacity as partners. Then they took the position that they lacked standing to answer and defend as partners, and despite the fact that they filed their answer and contested statute of limitations, when they were sued in that capacity, they weren't given the opportunity to prove that. And this is a problem that results from the fact that they were dissociated from the partnership, and despite that, they should have been given the opportunity to prove their claim. So were they partners at the time the litigation was filed? They were not partners at that time. At that time, they had been dissociated, Your Honor. And yet you confirm they owed those debts. Those are prospective. So, again, you're saying the vital document is at 944? For this appeal, Your Honor, the vital document is their statute of limitations defense that they asserted in their answer. In their answer, which is found at 944 and was filed in both cases? It was filed in the district court case, Your Honor. Okay. And it was filed by both John Keeley. But relevant to both the personal guarantee defense as well as the partnership liability defense. Yes, Your Honor. And it did not identify which it was objecting to. I guess I'm still a little confused, and I'll go back to the briefs and study more. What was the opportunity they were denied? Was it by application of law that they were denied an opportunity, or is it a procedural decision? If, Your Honor, and we cited in our brief, if you look at the court's ruling on the motion for summary judgment, the cross motions for summary judgment, the court stated that as a result of the default judgment, it will not consider any defenses raised by the Keeleys. Even though Don Keeley's. As a result of the default judgment. So they hadn't asserted that answer, statute of limitations, prior to the default judgment. They had, Your Honor. That document that I'm referring to at 944 was prior to the default judgment was entered. And Don Keeley, again, this is a key point, that Don Keeley did not have a guarantee liability, and she joined in that answer and filed that answer with John Keeley asserting the statute of limitations defense. But G and K didn't file an answer. That's correct, Your Honor. And I want to point out because. Do you agree G and K was required to file an answer? I would agree that G and K was subject to Rule 12, but the partners should have been granted an opportunity to defend their liability, and they were never given that opportunity. And the question is why did they not? And I guess my problem is you just told me they weren't partners, though, at the time the litigation was filed. But they were sued in their capacity as general partners based upon their previous liability. So they must have. So their individual responses should be deemed responses by partners who you just conceded weren't partners at the time these answers were filed. Yes, Your Honor. But, again, I have to go back to Section 152.306, which talks about that the claim against the partnership and the claim against the partners is the same claim, and they were being sued as partners. So when they answer and contest the statute of limitations, they must have standing to challenge that. And at the time, the decision that was entered by the Texas Court of Appeals, and American Court, and American Star v. Stowers had reached a different conclusion. So there was a great deal of confusion about the law at that time. There may have been confusion, but you could have protectively filed. Your Honor, theoretically they could have filed an objection to the motion for default judgment, but they were not required to do so because they had a timely answer. They didn't. They read the law that was then pertinent and thought we won't do it. Under American Star v. Stowers in the Texas Court of Appeals, their statute of limitations defense would have been preserved. And I want to go to another point by counsel for CPS, which is that he stated that the liability of partners under Texas partnership law is not joint in several, when in fact it is, and that's Texas Business Organization Code 152.304A, which specifically states that the liability is joint in several. And I just got this chart today, Your Honors, and I just want to point out that this account claim, if you look at the red in the upper left-hand corner of this chart, they never proved that it was an open account claim. And, in fact, they tried to prove, as the guarantee claim that went to trial, that that was an open account, and the Court rejected that. It did not find that that was an open account. So now they're saying hypothetically that they could have proven that it was an open account and a different statute of limitations would have applied. And we think that this Court should remand for determination on that, because that was never determined, and my clients should have their day in court on that. Thank you, counsel. The Court will take this matter under advisory.